# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **W.L., K.L., and G.L.**

**No. 25-521** (Mineral County CC-29-2023-JA-49, CC-29-2023-JA-50, and CC-29-2023-JA-51)

## MEMORANDUM DECISION

Petitioner Father D.L.[1] appeals the Circuit Court of Mineral County's July 21, 2025, order denying his motion for post-termination visitation with W.L., K.L., and G.L.,[2] arguing that the circuit court erred in finding that he failed to successfully complete his improvement period, terminating his parental rights, and denying his motion for post-termination visitation. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2023, the DHS filed a petition against the parents alleging educational neglect of W.L. and K.L. and drug abuse after G.L. tested positive for cocaine at birth. According to the DHS, the petitioner tested positive for alcohol, cocaine, and oxycodone, but denied any substance abuse and refused to submit for any additional tests. At an adjudicatory hearing in December 2023, the petitioner admitted to using drugs in the home and neglecting the children's education. The circuit court adjudicated the children as neglected based on the petitioner's stipulations and granted him a post-adjudicatory improvement period, the terms of which required him to participate in adult life skills and parenting classes, drug screens, individual therapy, supervised visitation, and substance abuse education. In May 2024, the circuit court extended the petitioner's improvement period. At a hearing in September 2024, the circuit court granted the petitioner a post-dispositional improvement period, finding that the petitioner had "made progress on [his] case plan[] but need[ed] additional time to secure housing, employment, and sobriety."

The circuit court then held a series of dispositional hearings, culminating in a final hearing in May 2025. The court heard from a Child Protective Services ("CPS") worker, who testified that the petitioner was "no further along than what he was at the beginning of the case." She explained that the petitioner inconsistently participated in services, frequently tested positive for alcohol and cocaine, and had not seen the children since October 2024. The DHS then called the Director of

---

[1] The petitioner appears by counsel J. Brent Easton. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Madison B. Martin appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

the Mineral County Community Corrections ("MCCC"), Tara Hockaday, who testified that the petitioner successfully completed some services, including substance abuse education, adult life skills education, and parenting classes. However, she explained that the petitioner missed ten drug screens between January and March 2025, adding that when the petitioner did report, he occasionally tested positive for cocaine and consistently tested positive for alcohol despite knowing he was prohibited from consuming alcohol. Additionally, Ms. Hockaday informed the circuit court that she had discharged the petitioner from the MCCC in April 2025 after he became aggressive with her over the blood card drug tests. The court then heard testimony from the petitioner, who admitted to drinking alcohol throughout the proceedings, claimed he did not have an addiction to alcohol, denied using any drugs, and disputed the accuracy of the blood card drug tests used by the MCCC.

After considering the evidence, the circuit court entered a dispositional order on June 6, 2025, concluding that the petitioner failed to comply with the terms of his improvement periods. Specifically, the court found that the petitioner repeatedly tested positive for substances, failed to appear for drug tests, and refused to acknowledge his substance abuse problem. Further, the court observed that the petitioner was "unable to cope with frustrations" as he "lash[ed] out at service providers and turn[ed] to alcohol as a means of coping with his stress[]," which demonstrated that he was unable "to parent his children without the use of alcohol or other substances." Thus, the court found that the petitioner could not correct the conditions of neglect in the near future. The circuit court further found that termination of the petitioner's parental rights was in the children's best interests because of their ages and need for permanency. Accordingly, the circuit court terminated the petitioner's parental rights to the children.[3] The order noted that the court would address post-termination visitation at a permanent placement review hearing in July 2025.

At the permanency hearing, the petitioner moved for post-termination visitation with the children. The guardian recommended no post-termination visitation because W.L. and K.L. reported to multiple individuals that they did not desire ongoing visitation with the petitioner. The DHS and the Court Appointed Special Advocate ("CASA") joined the guardian's recommendation. In response, the petitioner argued that the children had a bond with him and that they were too young for the court to consider their wishes.[4] Ultimately, the court found that W.L. and K.L. had a bond with the petitioner, but G.L. did not because she was an infant when removed from his custody. The court further found that it could consider W.L.'s and K.L.'s wishes despite their age because of their maturity, which they demonstrated through their communication with multidisciplinary team members, their lived experiences resulting from the petitioner's drug use and instability, and W.L.'s "expressed doubt of her parents' ability to rectify the circumstances" at issue. Thus, on July 21, 2025, the court entered an order denying the petitioner's motion, finding that post-termination visitation would be detrimental to the children's wellbeing and against their

---

[3] The circuit court also terminated mother's parental rights. The permanency plan for the children is adoption in their current placements.

[4] At the time of this hearing, W.L. was nine years old, K.L. was eight years old, and G.L. was two years old.

best interests as such contact would "be confusing to the children as they move towards permanency." The petitioner appeals from this order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, 930 S.E.2d 400 (2026). At the outset, we note that the petitioner asks this Court to substantively review an assignment of error in which he alleges that the circuit court erred in finding that he failed to successfully complete his improvement period and in terminating his parental rights. However, the petitioner is not entitled to such review because he failed to timely appeal the circuit court's June 6, 2025, dispositional order. In Syllabus Point 5 of *In re S.L.*, 243 W. Va. 559, 848 S.E.2d 634 (2020), this Court held, in part, that "[t]he timeframe to appeal a final disposition order is set forth in Rule 49 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Rule 11 of the Rules of Appellate Procedure." Those rules provide that a notice of appeal from an order in an abuse and neglect proceeding must be filed within thirty days after entry of the order, and the appeal must be perfected within sixty days after entry of the order. W. Va. R. P. Child Abuse & Neglect Pro. 49; W. Va. R. App. P. 11. Critically, we have held that "[f]iling a post-termination visitation motion does not extend the timeframe in which to appeal a final disposition order entered in an abuse and neglect matter." Syl. Pt. 5, in part, *In re S.L.*, 243 W. Va. 559, 848 S.E.2d 634 (2020). Therefore, if the petitioner sought to challenge any rulings in the June 6, 2025, dispositional order, the notice of appeal should have been filed by July 7, 2025, and the appeal should have been perfected by August 5, 2025. However, the Court received the petitioner's notice of appeal on August 13, 2025—more than one month *after* the deadline had expired to perfect an appeal from the dispositional order. As the petitioner missed the deadline to appeal the dispositional order, he waived any arguments relating to the circuit court's rulings memorialized therein, and such arguments cannot now be asserted through the timely appeal of the circuit court's July 21, 2025, order. *See In re B.W.*, 244 W. Va. 535, 539, 854 S.E.2d 897, 901 (2021) (finding that by failing to appeal from the final dispositional order, the petitioners waived any arguments relating to the perceived deficiencies in that order). Therefore, we decline to consider the petitioner's assignments of error related to the termination of his parental rights as they are not properly before this Court.

Turning to the petitioner's remaining assignment of error, the petitioner argues that the circuit court abused its discretion in denying his motion for post-termination visitation because it "hedged its decision on the guardian['s] . . . report that the children did not desire further visits." In support, the petitioner relies on West Virginia Code § 49-4-601(c)(6)(C), which directs circuit courts to "give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." The petitioner contends that W.L. and K.L. "were significantly less than fourteen years of age and could not possibly have understood the ramifications of having no visits with their biological parents." However, § 49-4-601(c)(6)(C) controls disposition—not post-termination visitation. Pursuant to recently amended Rule 15(b)(2)(A) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings,

> The [circuit] court may grant post-termination visitation only if it finds that such visitation is in the child's best interests, taking into consideration:

3

i. The guardian ad litem's oral or written recommendation on whether post-termination visitation is in the child's best interests,

ii. If the child is of sufficient age or maturity, whether the child wishes to have visitation; and

iii. Any other relevant evidence, including, but not limited to, the nature of the abuse and/or neglect that prompted termination of rights and the existence of a bond.

Here, the circuit court determined that W.L. and K.L. were sufficiently mature based on their actions, expressed opinions throughout the case, and lived experiences. Furthermore, the circuit court also considered the recommendations of the guardian, the DHS, and the CASA representative, all of whom opined that visitation was not in the children's best interest. Indeed, the record supports the court's determination, particularly given the petitioner's refusal to acknowledge the conditions of abuse and neglect and his combative behavior towards individuals involved with the case. Accordingly, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, the circuit court's July 21, 2025, order is hereby affirmed.

Affirmed.

**ISSUED:** July 28, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan

4